UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

OCTAVIA S.,

                        Plaintiff,

v.                                                 5:21-CV-0444
                                                                              (GTS/ML)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                                OF COUNSEL:

OCTAVIA S.
  Plaintiff, *Pro se*
1530 E. Genesee Street, #402
Syracuse, NY 13210

SOCIAL SECURITY ADMINISTRATION          NATASHA OELTJEN, ESQ.
OFFICE OF GENERAL COUNSEL                Special Assistant U.S. Attorney
  Counsel for Defendant
JFK Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this action filed by Octavia S. ("Plaintiff") against the Commissioner of Social Security ("Defendant") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), is Defendant's motion for judgment on the pleadings. (Dkt. No. 18.) For the reasons set forth below, Defendant's motion for judgment on the pleadings is granted, and Plaintiff's Complaint is dismissed.

**I.**        **RELEVANT BACKGROUND**

### A.     Factual Background

Plaintiff was born in 1970, making her 47 years old at her application filing date and 49 years old at the date of the ALJ's decision. (T. 10.)[2] In her application, Plaintiff alleged that she is disabled due to neck arthritis, back arthritis, and knee and patella chondromalacia and arthritis. (T. 167.)

### B.     Procedural History

On February 25, 2018, Plaintiff applied for Supplemental Security Income. (T. 9.) This application was initially denied on April 20, 2018, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Plaintiff appeared at a hearing before ALJ John P. Ramos, on October 8, 2019. (T. 9, 71-85.) On October 16, 2019, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 9-14.) On April 14, 2021, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (T. 1-5.)

### C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 9-14.) First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2015. (T. 11.) Second, the ALJ found that Plaintiff did not engage in substantial gainful employment during the period from her alleged onset date of August 14, 2014, through her date last insured of December 31, 2015. (T. 11.) Third, the ALJ found that through the date last insured, Plaintiff had the following two

---

[2]     The Administrative Transcript is found at Dkt. No. 13. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

medically determinable impairments: (1) osteoarthritis of the knees; and (2) hypertension. (T. 11-12.)  Fourth, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, Plaintiff did not have a severe impairment or combination of impairments. (T. 12.)  Fifth, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from August 15, 2014, the alleged onset date, through December 31, 2015, the date last insured. (T. 13.)

        **D.**     **The Parties' Briefing on Defendant's Motion**

              **1.**     **Plaintiff's Failure to File a Brief**

Plaintiff did not file a brief in this matter despite being afforded the opportunity to do so. (*See generally* Docket Sheet.)  Specifically, upon Defendant's filing of the Administrative Transcript on September 21, 2021, Plaintiff was notified that her brief was due on November 5, 2021. (Dkt. No. 13.)  Plaintiff did not file a brief or extension request by November 5, 2021. (*See generally* Docket Sheet.)  The Court issued a Text Order on November 9, 2021, indicating that it would extend the deadline for Plaintiff to submit a brief until December 3, 2021. (Dkt. No. 15 [Text Order filed 11/9/2022].)  Plaintiff failed to file a brief or extension request by December 3, 2021. (*See generally* Docket Sheet.)  The Court issued a Text Order on December 9, 2021, indicating that it would extend the deadline for Plaintiff to submit a brief until January 4, 2022. (Dkt. No. 16 [Text Order filed 12/9/2021].)  Plaintiff failed to file a brief or extension request by January 4, 2022. (*See generally* Docket Sheet.)  The Court issued a Text Order on January 12, 2022, indicating that the deadline for Defendant to submit a brief by March 1, 2022. (Dkt. No. 17 [Text Order 1/12/2022].)  In the Court's Text Order of January 12, 2022, it also indicated that it would extend the deadline for Plaintiff to submit a brief up to thirty-five (35)

days after being served with Defendant's brief. (*Id.*) Defendant filed her brief on February 28, 2022. (Dkt. No. 18 [Def.'s Mem. of Law].) The Court issued a Text Order on February 28, 2022, indicating that the deadline for Plaintiff to file her brief was April 4, 2022. (Text Order filed 2/28/2022.) However, Plaintiff did not file a brief by that date, and has not filed a brief as of the date of this Decision and Order. (*See generally* Docket Sheet.) The Court is entitled to consider the record without the benefits of any argument Plaintiff might have put forth in support of her appeal. General Order #18, at 7.

### 2. Defendant's Motion for Judgment on the Pleadings[1]

Generally, in her motion, Defendant asserts four main arguments. (Dkt. No. 18, at 8-13 [Def.'s Mem. of Law].) First, Defendant argues that, as a procedural matter, the ALJ could have dismissed Plaintiff's current claim for benefits based on administrative *res judicata*. (*Id.* at 9.)

Second, Defendant argues that the ALJ's material findings are supported by substantial evidence. (*Id.* at 8-9.) More specifically, Defendant argues that the ALJ correctly concluded that Plaintiff's impairments did not significantly limit her ability to perform work-related activities during the relevant period based on the following four reasons: (1) the largely benign objective evidence support such a finding; (2) reports of Plaintiff's daily functioning; (3) evidence that medication was effective; and (4) Plaintiff's own report that her impairments were not the reason why she had stopped working. (*Id.*) As a result, Defendant argues that the Court must defer to the ALJ's findings because a reasonable factfinder would not "have to conclude otherwise." (*Id.* at 9. [citation omitted].)

---

[1]  The Court notes that, due to Plaintiff's failure to file a brief, Defendant's arguments presume certain arguments that Plaintiff may have set forth in her brief. (*See generally* Dkt. No. 18, at 8-13 [Def.'s Mem. of Law].)

Third, Defendant argues that the ALJ reasonably found that Plaintiff failed to meet her Step Two burden, because the medical records from the relevant period referenced only complained of knee pain that did not significantly limit her ability to perform basic work activities as set forth in 20 C.F.R. § 404.1522(b)(1). (*Id.* at 10-11.) More specifically, Defendant argues that the ALJ sufficiently explained that this finding was based on the following six considerations: (1) x-rays of both knees were essentially normal, and Plaintiff confirmed that she had not sustained any broken bones; (2) Dr. Suarez's normal objective examination findings that included Plaintiff's normal range of motion, strength, gait (despite tenderness in both knees), and overall normal findings as to her neck and back; (3) according to a "more comprehensive" physical examination in May 2016, Plaintiff's normal range of motion, sensation, strength, and overall impression that she did "not appear to be in a great deal of pain," that resulted in Plaintiff being "cleared for activities as tolerated"; (4) the fact that Plaintiff's treatment records indicated that she lived on the third floor of a private house, thereby assuming that she would be required to ascend and descend stairs on a regular basis; (5) the indications that Plaintiff's impairments were not necessarily the reason why she remained unemployed in 2014 and 2015; and (6) the state agency physician's conclusion that there was insufficient evidence to establish the severity of Plaintiff's impairments during the relevant period. (*Id.* at 11-12.)

Fourth, in addition to the ALJ's finding that Plaintiff failed to meet her Step Two burden based on her osteoarthritis of the knees, Defendant argues that the ALJ also correctly determined that Plaintiff failed to meet her Step Two burden as it relates to her hypertension. (*Id.* at 12.) More specifically, Defendant argues that for the same reasons regarding Plaintiff's complained of knee pain, her complained of hypertension did not significantly limit her ability to perform basic work activities as set forth in 20 C.F.R. § 404.1522(b)(1). (*Id.*) In addition to those

5

reasons, Defendant argues that the ALJ properly considered that this impairment was largely controlled with medication—rendering Plaintiff's hypertension to not be a severe impairment. (*Id.*)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord*, *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

  **B.**  **Standard to Determine Disability**

  The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as

7

> to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord*, *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. Whether Plaintiff Had Engaged in Substantial Gainful Activity

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 18, at 10 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At Step One of the sequential evaluation process, the ALJ must determine whether the claimant was engaged in substantial gainful activity after submitting her application for benefits. *Paulino v. Colvin*, 13-CV-3718, 2014 WL 2120544, at *9 (S.D.N.Y. May 13, 2014). "Substantial gainful activity" is defined as work that involves "doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510. Here, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity during the applicable period—a finding that benefits Plaintiff. (T. 11.) Therefore, the Court proceeds to Step Two of the sequential evaluation process.

#### B. Whether the ALJ Erred in Failing to Find That Plaintiff's Osteoarthritis of The Knees and Hypertension Are Severe Impairments

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 18, at 8-12 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

According to the Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers and usual work situations. *Taylor v. Astrue*, 32 F. Supp.3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, 07-CV-10563, 2008 WL 2627714, at *16 [S.D.N.Y. July 2, 2008]; 20 C.F.R. § 404.1521[b][1]-[5]).

The standard for a finding of severity under the second step of the sequential analysis has been found to be de minimis, and is intended only to screen out the truly weakest of cases. *Davis v. Colvin*, 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 [2d Cir. 1995]). "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims' [], the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor*, 32 F. Supp.3d at 265 (quoting *Dixon*, 54 F.3d at 1030). At step two, the claimant bears the burden to provide medical evidence demonstrating the severity of her condition. 20 C.F.R. § 404.1512(a); *Bowen*, 482 U.S. at 146.

The Court begins its analysis with evaluating whether the Plaintiff's osteoarthritis of the knees qualifies as a severe impairment. The Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's osteoarthritis of the knees did not qualify as a severe impairment. The ALJ concluded that Plaintiff's knee pain impairment was not severe, finding that the evidence showed that Plaintiff had no limitations in her ability to perform basic work

9

activities. (T. 12.) Although Plaintiff's impairment could have been reasonably expected to produce the alleged symptoms, the ALJ found that Plaintiff's statements concerning intensity, persistence and limiting effects of her symptoms were inconsistent with the objective medical evidence, as well as other record evidence. (T. 12-13.)

In reaching this conclusion, the ALJ relied upon the following facts: (1) Plaintiff had normal x-rays of both knees (T. 223, 246); (2) Plaintiff was able to ambulate without assistance (T. 221, 223, 231); (3) Plaintiff was able to climb stairs on a regular basis given that her residence was located on the third floor of a private residence (T. 231); (4) medical records documenting Plaintiff's normal range of motion, strength, and gait during an October 2015 examination (T. 237); (5) medical records documenting Plaintiff's normal range of motion, no joint swelling, normal strength, intact reflexes, no sensory deficits, general impression that she did "not appear to be in a great deal of pain and physical examination of both knees is unremarkable" during a May 2016 examination (T. 286). The ALJ also afforded great weight to the opinion from nonexamining state agency medical consultant examiner S. Gandhi, M.D., finding her opinion to be persuasive, as well as consistent with Plaintiff's limited treatment. (T. 13, 87-91.) Plaintiff's hearing testimony also supports the ALJ's finding that her knee pain did not qualify as a severe impairment. According to Plaintiff, she "was pretty much doing okay" in 2014 and 2015, was able to travel from place-to-place by taking the train or bus, and volunteered for "Peace Incorporated" at a food pantry. (T. 82-84.)

In the Court's view, Plaintiff's subjective transient knee pain (as noted within her physical therapy records) does not indicate an impairment that surpasses the *de minimis* threshold because it did not impose more than minimal restrictions on Plaintiff's ability to perform work-related activities. (*See* T. 237 [noting that, upon examination, Plaintiff presented

with normal range of motion in her extremities, no swelling, normal muscle strength]; *see* T. 286 [stating that Plaintiff was cleared for activities as tolerated]; *see* T. 84 [Plaintiff admitting that she can attend her therapy appointments by traveling on a bus or train].)

Next, the Court turns its attention to determining whether substantial evidence supports the ALJ's finding that Plaintiff's hypertension did not qualify as a severe impairment.  As the ALJ noted in her decision, the prescribed medication aimed to regulate Plaintiff's hypertension was successful, and indeed, the ALJ made multiple references to Plaintiff's managed blood pressure measurements over a sustained period.  (T. 13, 226, 243, 294, 296.)  Furthermore, the record contains no evidence suggesting that Plaintiff's hypertension resulted in any limitation on her ability to perform work-related activities.  (*See generally* Dkt. No. 13.)  Specifically, on December 15, 2015, Plaintiff reported that her "[blood] pressure [was] well controlled" and was "no longer experiencing headache and fatigue."  (T. 226.)  Because "'[i]mpairments that are controllable or amenable with treatment do not support a finding of disability," the Court accordingly finds that Plaintiff's regulated hypertension fails to qualify as one that is severe in nature.  *Crowe v. Astrue*, 09-CV-0928, 2011 WL 4055374, at *11 (N.D.N.Y. Aug. 2, 2011) (Homer, M.J.), *report-recommendation adopted by*, 2011 WL 4055369 (quoting *Davidson v. Astrue*, 578 F.3d 838, 846 [8th Cir. 2009]); *see Lowe v. Barnhart*, 04-CV-9012, 2006 WL 1911020, at *7-8 (S.D.N.Y. July 10, 2006) (finding that the plaintiff's hypertension was not a severe impairment because it was controlled through medication and plaintiff could perform a variety of daily activities).

For these reasons, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's osteoarthritis of the knees and hypertension was not severe.

## C.  Whether the ALJ Erred in Failing to Consider the Effect of All of Plaintiff's Impairments on Her Ability to Work

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 18, at 8-12 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Although the record supports the ALJ's finding that Plaintiff's osteoarthritis of the knees and hypertension are not severe impairments, the ALJ must also consider the "combined effect of all of [Plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity." 20 C.F.R. § 404.1523. Here, the ALJ did consider the combined effect of both Plaintiff's osteoarthritis of the knees and hypertension on her ability to work. Specifically, the ALJ found that Plaintiff did not have a severe combination of impairments, because the combination of impairments did not significantly limit her ability to perform basic work-related activities for 12 consecutive months. (T. 12.)

In any event, the ALJ highlighted that Plaintiff's unemployment status was due to her inability to find work, and was not the result of any alleged disability. (T. 13.) The Court agrees with this finding because, during her hearing testimony, Plaintiff was unable to explain to the ALJ how her impairments "caused functional limitations that preclude[d her] from engaging in any work activity." *Aden v. Barnhart*, 01-CV-5179, 2003 WL 1090324, at *8 (S.D.N.Y. Mar. 6, 2003) (citing *Rivera v. Harris*, 623 F.2d 212, 215-16 [2d Cir. 1980]). Rather, Plaintiff testified that since the date of alleged onset, she had not worked, even though she "was pretty much doing okay" during the relevant period in 2014 and 2015. (T. 83.) In fact, Plaintiff admitted that she had been "trying to look for work," and instead, accepted a volunteer position "helping with giving out the food to people." (T. 82-83.) This exchange, along with the record's objective medical evidence, show that the ALJ's finding (that the combination of Plaintiff's impairments

12

did not impose more than a minimal limitation on her ability to perform work-related activities) was in accord with the applicable law, as outlined above, and supported by substantial evidence.

For these reasons, the Court finds that the ALJ properly considered the effect of all of Plaintiff's impairments on her ability to work.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: August 22, 2022
Syracuse, New York

_____
Glenn T. Suddaby
Chief U.S. District Judge